IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:16-CV-00106-D

**Renee Marie Gbruoski,**

                Plaintiff,

v.

**Nancy A. Berryhill**, Acting
Commissioner of Social Security,[1]

                Defendant.

**Memorandum & Recommendation**

Plaintiff Renee Marie Gbruoski instituted this action on June 8, 2016, to challenge the denial of her application for social security income. Gbruoski claims that the Administrative Law Judge ("ALJ") Edward T. Morriss erred in (1) failing to adequately develop the record; (2) failing to secure the testimony of a Vocational Expert ("VE"); and (3) omitting certain limitations from the residual functional capacity ("RFC") determination. Both Gbruoski and Defendant Nancy A. Berryhill, the Acting Commissioner of Social Security, have filed motions seeking a judgment on the pleadings in their favor. D.E. 22, 26.

After reviewing the parties' arguments, the court has determined that ALJ Morriss reached the appropriate decision. ALJ Morriss's RFC determination properly reflects all of Gbruoski's established limitations. Additionally, ALJ Morriss was not required to obtain testimony from a VE in finding that there was work Gbruoski was capable of performing. Finally, ALJ Morriss fulfilled his duty to assist Gbruoski as an unrepresented claimant by properly developing the administrative record. Therefore, the undersigned magistrate judge

---

[1] Berryhill replaced Carolyn Colvin as the Acting Commissioner of Social Security on January 20, 2017.

recommends that the court deny Gbruoski's motion, grant Berryhill's motion, and affirm the Commissioner's decision.[2]

**I.      Background**

On December 19, 2011, Gbruoski filed applications for supplemental security income and child's insurance benefits.[3] In both applications, she alleged a disability that began on September 2, 1988. After her claims were denied at the initial level and upon reconsideration, Gbruoski appeared by video-conference before ALJ Morriss for a hearing to determine whether she was entitled to benefits. ALJ Morriss determined Gbruoski was not entitled to benefits because she was not disabled. Tr. at 60–68.

ALJ Morriss found that Gbruoski had the following severe impairments: degenerative disc disease and obesity. *Id*. at 62. ALJ Morriss found that Gbruoski's impairments, either alone or in combination, did not meet or equal a Listing impairment. *Id.* at 63. ALJ Morriss then determined that Gbruoski had the RFC to perform a light work, with an additional limitation that she can only occasionally climb ladders, ropes, or scaffolds. *Id*. at 64. ALJ Morriss concluded that Gbruoski had no past relevant work. *Id*. at 67. However, considering her age, education, work experience, and RFC, ALJ Morriss found that there were other jobs that existed in significant numbers in the national economy that Gbruoski was capable of performing pursuant to Rule 202.20 of the Medical-Vocational Guidelines. *Id*. at 67. In making this finding, ALJ Morriss found that Gbruoski's postural limitation had little or no effect on the occupational base

---

[2] The court has referred this matter to the undersigned for entry of a Memorandum and Recommendation. 28 U.S.C. § 636(b).

[3] To qualify for child's insurance benefits, Gbruoski must establish that she became disabled prior to September 2, 1992, her 22nd birthday. Although she had a knee impairment which required surgery during this time, ALJ Morriss found that her condition improved to the point that she no more than minimal functional limitations. Accordingly, his decision focused on her application for SSI. Tr. at 62–63.

2

for unskilled, light work. *Id*. Thus, ALJ Morriss found that Gbruoski was not disabled. *Id*. at 67–68.

After unsuccessfully seeking review by the Appeals Council, Gbruoski commenced this action on June 8, 2016. D.E. 7.

## II.     Analysis

### A.     Standard for Review of the Acting Commissioner's Final Decision

When a social security claimant appeals a final decision of the Commissioner, the district court's review is limited to the determination of whether, based on the entire administrative record, there is substantial evidence to support the Commissioner's findings. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence is defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). If the Commissioner's decision is supported by such evidence, it must be affirmed. *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996).

### B.     Standard for Evaluating Disability

In making a disability determination, the ALJ engages in a five-step evaluation process. 20 C.F.R. § 404.1520; *see Johnson v. Barnhart*, 434 F.3d 650 (4th Cir. 2005). The analysis requires the ALJ to consider the following enumerated factors sequentially. At step one, if the claimant is currently engaged in substantial gainful activity, the claim is denied. At step two, the claim is denied if the claimant does not have a severe impairment or combination of impairments significantly limiting him or her from performing basic work activities. At step three, the claimant's impairment is compared to those in the Listing of Impairments. *See* 20 C.F.R. Part 404, Subpart P, App. 1. If the impairment is listed in the Listing of Impairments or if it is

equivalent to a listed impairment, disability is conclusively presumed. However, if the claimant's impairment does not meet or equal a listed impairment, the ALJ assesses the claimant's RFC to determine, at step four, whether he can perform his past work despite his impairments. If the claimant cannot perform past relevant work, the analysis moves on to step five: establishing whether the claimant, based on his age, work experience, and RFC can perform other substantial gainful work. The burden of proof is on the claimant for the first four steps of this inquiry, but shifts to the Commissioner at the fifth step. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995).

### C. Medical Background

In 1988, Gbruoski sought treatment for knee pain from Dr. Scott Baron. Tr. at 339. Dr. Baron performed patellar realignment surgery on Gbruoski's right knee in July 1988. *Id*. at 350. Treatment notes from August of that year noted that she was doing well and had little pain. *Id*. at 348. When Gbruoski's pain returned later that year, she underwent arthroscopy and patellar chondroplasty followed by a patellectomy in 1989. *Id*. at 352. Gbruoski participated in physical therapy and her walking improved. *Id*. at 348. By September 1989, providers advised Gbruoski she could discontinue therapy as she was minimally symptomatic. *Id*.

Gbruoski underwent additional surgeries in 1990 and 1991, but the records from Jefferson Regional Medical Center no longer available. *Id.* at 841. Thereafter, Gbruoski suffered a right ankle fracture in 2004. *Id*. at 426. After the fracture healed, Gbruoski participated in physical therapy but she reported continuing pain with ambulation in December 2004. *Id*. at 422. In 2007, providers performed arthroscopic debridement and synovectomy of the right ankle with hardware removal. *Id*. at 376.

In May 2009, Gbruoski reported low back and left hip pain that had existed for approximately one year. *Id*. at 453–54. Her symptoms had almost fully resolved with physical

therapy and steroid injections. *Id*. However, at that time Gbruoski reported that her symptoms returned. *Id*. An examination revealed full motor strength in all extremities, negative straight leg raises, normal gait, and intact cervical range of motion. *Id*. An MRI a few months earlier demonstrated mild degenerative changes at L5-S1 with a small herniated disc without effect on the L5 nerve root. *Id*. Providers recommended no surgical intervention but suggested that Gbruoski follow-up for injection therapy. *Id*.

Gbruoski sought pain management for which providers recommended facet joint blocks for her pain issues. *Id*. at 449–50. Despite Gbruoski's reports that injections had not relieved her pain, an examination showed normal gait and good strength. *Id.* at 641.

Gbruoski reported worsening pain in her back and neck following a car accident in November 2009. *Id*. at 545. Imaging studies showed some interval change with Grade I retrolisthesis at L4-L5 associated with S1 nerve root contact. *Id*. at 621. Providers recommended injections and physical therapy. *Id*. at 620. Following an epidural steroid injection, Gbruoski reported improved functioning in February 2010. *Id*. at 616. She also reported significant improvement in her pain in July 2011 following a course of physical therapy. *Id*. at 606. Gbruoski reported that she was doing exercises and walking more. *Id*.

Gbruoski again reported worsening pain in 2012. *Id*. at 700. Dr. R. Mark Rodger noted that x-rays showed no changes since 2010. *Id*. He recommended physical therapy and pain management. *Id.* He opined that she did not require surgical intervention. *Id*. Imaging studies taken in July showed a small paramedian disc protrusion at L5-S1, without evidence of S1 root displacement or significant stenosis, and mild lower lumbar facet arthropathy. *Id*. at 752. Gbruoski's cervical spine evidenced broad-based right asymmetric protrusion of the disc and

osteophyte at C6 with mild mass effect upon the ventral thecal sac without significant central stenosis. *Id*. at 753.

Gbruoski sought another neurological consultation in August with Dr. Oren Gottfried. *Id*. at 754–57. His examination revealed full strength in all extremities and intact gait. *Id*. at 755. Imaging studies showed minimal L5-S1 retrolisthesis without evidence of motion segment instability, degenerative disc disease at L5-S1, and multilevel facet arthrosis of the lower lumbar spine. *Id*. at 757.

Although Gbruoski continued to report back pain, clinical examinations yielded few corroborative findings. *Id.* at 827–40. While her provider recommended injections in December 2012, Gbruoski declined that treatment. *Id*. at 834. Treatment notes from March 2013 state that she had no muscle spasms or trigger points and she displayed good and equal strength bilaterally. *Id*. at 832. By June, Gbruoski was seeing a chiropractor for neck pain. *Id*. at 829. Examination revealed negative straight leg raises with good strength and intact sensation. *Id.* at 830. Providers directed Gbruoski to lose weight, engage in an exercise program, and work on strengthening her core muscles. *Id*. In September, she reported that the pain medications were working well and that she had been trying to exercise. *Id*. at 827.

### D.     ALJ's Duty to Develop the Record

The Fourth Circuit has held that "the ALJ has a duty to explore all relevant facts and inquire into the issues necessary for adequate development of the record[.]" *Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986). An unrepresented claimant is entitled to the sympathetic assistance of the ALJ to develop the record. *Crider v. Harris*, 624 F.2d 15, 16 (4th Cir. 1980). An ALJ "is not required to function as the claimant's substitute counsel, but only to develop a reasonably complete record" *Bell v. Chater*, 57 F.3d 1065 (4th Cir. 1995), *reported in full at*

1995 WL 347142 (quoting *Clark v. Shalala*, 28 F.3d 828, 830–31 (8th Cir. 1994) (internal quotation marks omitted)).

The Fourth Circuit has explained that an ALJ should "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts, being especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." *Marsh v. Harris*, 632 F.2d 296, 299 (4th Cir. 1980) (citations and markings omitted); *Roseberry v. Colvin*, No. 3:15-CV-04895, 2016 WL 1737121, at *14 (S.D.W. Va. May 2, 2016). An ALJ may develop the record by subpoenaing and questioning witnesses, requesting records, or arranging physical or mental examinations or tests for the claimant. *See Fleming v. Barnhart*, 284 F. Supp. 2d 256, 272 (D. Md. 2003); *Roseberry*, 2016 WL 1737121, at *14.

An ALJ's failure to adequately develop the record warrants remand where the failure results in prejudice or unfairness to the claimant. *Sims v. Harris*, 631 F.2d 26, 28 (4th Cir. 1980); *see also Brown v. Shalala*, 44 F.3d 931, 935 (11th Cir. 1995); *Mann v. Astrue*, No. 5:07-201, 2008 WL 906346, at *17 (S.D.W. Va. Mar. 31, 2008). In other words, remand is improper "unless the claimant shows that he or she was prejudiced by the ALJ's failure. To establish prejudice, a claimant must demonstrate that he or she could and would have adduced evidence that might have altered the result." *Carey v. Apfel*, 230 F.3d 131, 142 (5th Cir. 2000) (citations omitted); *Roseberry,* 2016 WL 1737121, at *14.

A review of the Administrative Record demonstrates that ALJ Morriss properly developed the record. First, he noted that Gbruoski did not have an attorney and confirmed that she knew she had the right to have an attorney represent her. Tr. at 78. Gbruoski indicated she while she had tried to secure representation, she had been unable to do so for six months. *Id*. ALJ Morriss remarked that the hearing had been set three times and noted that there was a limit on the

number of times it could be rescheduled. *Id*. at 79. He also noted that Gbruoski may have difficulty with making time available if the hearing were once again rescheduled. *Id*.

ALJ Morriss also informed Gbruoski of his duty to identify any treatment she had received that was not reflected the file and to obtain any additional files before issuing his decision. *Id*. ALJ Morriss asked Gbruoski if she had received her case file and if she had any concerns with what was contained in the case file. *Id*. at 79–80. Gbruoski stated that she had not reviewed the most recent file sent to her but she had reviewed a previous one mailed to her several months earlier. *Id*. at 80. And although Gbruoski stated she had not reviewed everything, ALJ Morriss noted that he would afford her seven days to review the relevant documents and to inform him if there was anything that should or should not be included in the record. *Id.*

ALJ Morriss then questioned Gbruoski extensively about her educational, vocational, and medical backgrounds, symptoms, and treatment. *Id*. at 82–91. Moreover, Gbruoski is educated, with a college degree in criminal justice. *Id*. at 82. This suggests that she is not incapable of adequately representing herself and demonstrates that she is not amongst those claimants of limited education or cognition for whom an ALJ's duty to develop the record is even greater.

A review of ALJ Morriss's disability determination also demonstrates the completeness of the record. A letter from Jefferson Regional Medical Center noted that Gbruoski had orthopedic surgery on seven occasions between 1989 and 1991, but stated that the records were no longer available. *Id*. at 841. ALJ Morriss discussed the sparse evidence available prior to Gbruoski's 22nd birthday. He addressed Dr. Baron's treatment notes related to Gbruoski's right knee. *Id*. at 63. He also examined the post-surgical and physical therapy notes. *Id*. ALJ Morriss observed that the records from this time revealed that Gbruoski was doing well after her first surgery, was doing better with improved walking after her second surgery, and was minimally

symptomatic and no longer required therapy by September 1989. *Id*. Based on what evidence was available, ALJ Morriss found that Gbruoski's condition improved to the point that it caused no more than minimal functional limitations prior to her 22nd birthday in 1992. *Id*. Thus, although Gbruoski asserts that ALJ Morriss's inquiry into her her condition prior to the age of 22 was inadequate, the evidence suggests that this issue was sufficiently explored.

Moreover, Gbruoski has not demonstrated prejudice resulting from any alleged failure of ALJ Morriss to fully develop the record. Gbruoski has not identified additional medical records in existence for ALJ Morriss to obtain. Nor does Gbruoski allege what evidence is contained in any unincorporated medical records that supports her claims of disability. Instead, Gbruoski makes a wholly unsupported allegation that ALJ Morriss should have explored her early medical conditions more fully. This is insufficient to meet her burden. Consequently, her claims of error on this issue lack merit.

### E. Residual Functional Capacity and Vocational Expert Testimony

Gbruoski also contends that ALJ Morriss erred by relying on the Medical-Vocational Guidelines to conclude that there was work existing in the national economy that she could perform. She argues that the RFC determination failed to reference all of her limitations. Because she asserts she has additional exertional and non-exertional limitations, she submits that ALJ Morriss was required to secure testimony from a VE. The Commissioner asserts, and the court concludes, that substantial evidence supports ALJ Morriss's RFC determination and he did not err in his step-five analysis by relying on the Grids to find that there were other jobs that she was capable of performing.

The RFC is a determination, based on all the relevant medical and non-medical evidence, of what a claimant can still do despite her impairments; the assessment of a claimant's RFC is

the responsibility of the ALJ. *See* 20 C.F.R. §§ 404.1520, 404.1545, 404.1546; SSR 96-8p, 1996 WL 374184, at *2. If more than one impairment is present, the ALJ must consider all medically determinable impairments, including medically determinable impairments that are not "severe," when determining the claimant's RFC. *Id.* §§ 404.1545(a), 416.945(a). The ALJ must also consider the combined effect of all impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. *Id.* § 404.1523; *see Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989) ("[I]n evaluating the effect[] of various impairments upon a disability benefit claimant, the [Commissioner] must consider the combined effect of a claimant's impairments and not fragmentize them.").

Additionally, while a claimant has the burden at steps one through four, it is the Commissioner's burden at step five to show that work the claimant is capable of performing is available. *Pass*, 65 F.3d at 1203 (citing *Hunter* v. *Sullivan*, 993 F.2d 21, 35 (4th Cir. 1992)). "The Commissioner may meet this burden by relying on the Medical–Vocational Guidelines (Grids) or by calling a vocational expert [("VE")] to testify." *Aistrop v. Barnhart*, 36 F. App'x 145, 146 (4th Cir. 2002) (citing 20 C.F.R. § 404.1566)). The Grids are published tables that take administrative notice of the number of unskilled jobs at each exertional level in the national economy. 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00(a).

When a claimant suffers solely from exertional impairments, the Grids may satisfy the Commissioner's burden of coming forward with evidence as to the availability of jobs the claimant can perform. *Grant* v. *Schweiker*, 699 F.2d 189, 192 (4th Cir. 1983). When a claimant: (1) suffers from a non-exertional impairment that restricts his ability to perform work of which he is exertionally capable, or (2) suffers an exertional impairment which restricts him from performing the full range of activity covered by a work category, the ALJ may not rely on the

Grids and must produce specific vocational evidence showing that the national economy offers employment opportunities to the claimant. *See Walker*, 889 F.2d at 49; *Hammond* v. *Heckler*, 765 F.2d 424, 425–26 (4th Cir. 1985); *Cook* v. *Chater*, 901 F. Supp. 971 (D. Md. 1995); 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 201.00(h).

Here, Gbruoski contends that her credible testimony established additional exertional and non-exertional limitations. She claims that she has postural limitations as a result of her knee instability. She also submits that she has mental limitations as a result of her chronic knee and back pain, although she does not identify the specific limitations resulting from these conditions. Despite these claims, ALJ Morriss did not conclude that the evidence supported additional limitations more-restrictive than determined in the RFC. ALJ Morriss found that Gbruoski's statements concerning the limiting effects of her symptoms were not entirely credible. Tr. at 65. He noted that Gbruoski's treatment had been conservative; she had generally normal exam findings, including normal gait, full strength, negative straight leg raise, and good range of motion; both medications and physical therapy had produced positive results; her treating providers had recommended minimal therapeutic modalities, including diet, exercise, and stretching; her imaging studies revealed no severe or significant abnormalities; and she declined additional injection treatments. *Id*. at 65–66.

Further, as ALJ Morriss noted, state agency medical consultants opined that Gbruoski was capable of light work with limitations on climbing ladders, ropes, and scaffolds. *Id*. at 66. He noted that these findings were consistent with her conservative treatment generally normal examination findings. *Id*. at 67. ALJ Morriss afforded these opinions significant weight. *Id*. These opinions constitute substantial evidence supporting ALJ Morriss's RFC finding. *See Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986) (opinion of non-examining physicians can

constitute substantial evidence to support the decision of the Commissioner); *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984), (ALJs may rely on the opinions of non-examining physicians when such opinions find consistency with the whole of the record).

Given the evidence, ALJ Morriss found that Gbruoski could perform a full range of light work. *Id*. at 67. He noted that her additional limitation in the RFC for only occasional climbing of ladders, ropes, and scaffolds had little or no effect on the occupational base for unskilled light work. *Id*. Gbruoski has failed to demonstrate that evidence supports further limitations.

Given the lack of additional limitations, ALJ Morriss permissibly relied on the Grids to direct the disability determination. Based on Gbruoski's age, education, RFC, and work experience, Grid Rule 202.20 directed ALJ Morriss to find that Gbruoski was non-disabled. *Id*. at 67. ALJ Morriss was not required to secure testimony from the VE as to other work available given that the Grids direct the disability conclusion in such instances. SSR 83-11. In the present case, given both the finding that Gbruoski's postural limitation had little or no effect on the occupational base and the absence of non-exertional limitations in Gbruoski's RFC determination, the Commissioner has satisfied her burden of identifying work available by application of the Grids. Accordingly, Gbruoski's argument that VE testimony was required on this issue is without merit.

### III. Conclusion

For the forgoing reasons, the court recommends that the court deny Gbruoski's Motion for Judgment on the Pleadings (D.E. 22), grant Berryhill's Motion for Judgment on the Pleadings (D.E. 26), and affirm the Commissioner's determination.

Furthermore, the court directs that the Clerk of Court serve a copy of this Memorandum and Recommendation on each of the parties or, if represented, their counsel. Each party shall

have until 14 days after service of the Memorandum and Recommendation on the party to file written objections to the Memorandum and Recommendation.  The presiding district judge must conduct his or her own review (that is, make a *de novo* determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation, receive further evidence, or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(l); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation. *See Owen v. Collins*, 766 F.2d 841, 846–47 (4th Cir. 1985).**

Dated: June 13, 2017

_____
ROBERT T. NUMBERS, II
UNITED STATES MAGISTRATE JUDGE